COLE, Justice
(concurring in part and dissenting in part).
I agree with the majority opinion insofar as it finds the Louisiana Public Service Commission (LPSC) is authorized to con-' duct a management audit of Gulf States Utilities Company. Although of questionable genesis and need, the LPSC has shown the audit is part of its on-going rate-making proceeding involving Gulf States.
However, I disagree with the majority’s conclusion that 'the economics and rate analysis division of the LPSC was “underfunded by the legislature, so the only way that the commission could have conducted the management audit was hiring a consultant such as Kennedy.” The LPSC’s failure to take serious steps to implement an economic and rate analysis division is a breach of its legislatively established duty and should preclude it from hiring outside consultants or attorneys.
The economics and rate analysis division was set up by the legislature in 1985:
§ 1163.3. Economics and rate analysis division
A. In order to assist the commission in making an examination of the affairs of any person doing a public service or public utilities business in Louisiana concerning matters affecting services and rates charged Louisiana consumers by such public service or public utility business, or for representing the Public Service Commission in matters affecting services and rates charged by public utilities to Louisiana consumers or the judicial review thereof, there is hereby established an economics and rate analysis division *581 of the Public Service Commission. Said division shall consist of, but shall not be limited to, persons with training in auditing, economics, finance, engineering, and accounting, as well as attorneys licensed to practice in the state of Louisiana, all of whom shall be full-time employees of the commission, and such other support staff and clerical assistants, as may be necessary to make such examinations. B. If the staff of the economics and rate analysis division is unable or insufficient to assist the commission in evaluating, reviewing, and representing the commission in matters affecting services and rate charged by public utilities or the judicial review thereof, the commission is empowered to retain other attorneys, engineers, consultants, accountants, or support staff and clerical assistants to assist the economics and rate analysis division.
(emphasis added).
Thus, the legislature established and provided for the implementation of a permanent division to assist the LPSC in its examination. At a minimum, the division must consist of persons trained in auditing, economics, finance, engineering and accounting, as well as attorneys. Before the LPSC is empowered to retain outside consultants under La.R.S. 45:1163.3(B), it must show that the division is “unable or insufficient” to provide the needed service. Further, the function of the outside consultants is to assist the economics and rate analysis division, not replace it. In allowing for outside consultants, La.R.S. 45:1163.3(B) contemplates the existence of the economics and rate analysis division. If the LPSC does not implement the division with “full-time employees,” the outside consultants provision is meaningless.
In the present case, it is clear the LPSC has not shown its economics and rate analysis division is unable or insufficient to assist it, and it cannot do so, of course, since the division’s de facto non-existence precludes, such assistance. In its brief to this court, the LPSC concedes that at the time the management audit was ordered and at the time of trial, the division had only one employee. It suggests the division was understaffed because the legislature had only recently created it. However, a review of the facts show La.R.S,. 45:1163.3 became effective on July 12, 1985. The management audit was ordered on April 29, 1988. It strains credibility to believe the LPSC could not have set up and staffed the division in the space of three years.
The obvious effect of La.R.S. 45:1163.3 is to negate the payment of vast sums to outside consultants and attorneys, the cost of which is usually passed on to the consumer through the rate-making process. The hiring of Kennedy, instead of relying primarily upon full-time employees of the commission, defeats this public interest and is, in my view, legally impermissible. A reading of La.R.S. 45:1180, 1181 bolsters this conclusion.
Secondly, the LPSC contends that “state budget constraints” prevented it from setting up the division. I find it difficult to accept this contention. The state appropriations for fiscal years 1988-89 and 1989-90 show over $3 million of “fees and self-generated revenue” allocated to the LPSC in each of those years. (See Act 19 of 1988 and Act 20 of 1989, regular sessions.) Therefore, the LPSC's contention that the division was under-funded by the legislature seems in error. Further, even if the division was somehow under-funded, this does not absolve the LPSC of its legislatively mandated duty to implement the division.[1]
Finally, I disagree with the majority’s conclusion that the trial court lacked authority to order the commission and its consultants to hold a hearing on how Gulf States shall best recover the costs of the management audit. Under La.R.S. *582 45:1192, the trial court is given broad authority to “affirm the order of the commission complained of, or it may change, modify, alter or set it aside, as justice may require.”
At trial, Gulf States raised the issue of whether it could recover the costs of the audit from its customers. Michael Font-ham, the attorney for the LPSC, took the position that the LPSC did not deny Gulf States’ right to pass on the cost of the audit to its customers:
Your Honor, the fact of the matter is that the ratepayer pays; that Gulf States does not pay for the audit. They reflect it in their regulatory expense, and they get it in rates.
Gulf States argued the policy of the LPSC was not to allow recovery unless the audit expense was incurred in a test year. Given the unusual circumstance of an audit ordered during an on-going rate-making proceeding, coupled with the assertions of the LPSC’s own attorney that Gulf States could pass on the expense of the audit, the trial court’s order appears to be within its power to modify a commission order as justice requires. The court was in essence simply clarifying a point already agreed upon by the LPSC. Therefore, I conclude the majority erred in reversing the trial court’s judgment on this point.

. From 1985 — 1987, La.R.S. 45:1177(D) provided dedicated funding for the economics and rate analysis division. Effective July 1, 1988, La.R.S. 49:308.3(A) abolished the dedication of special funds. Nonetheless, this did not abolish the LPSC’s duty to implement the division. Given the mandatory nature of the legislation establishing the division, it was incumbent upon the LPSC to give the division high priority in the allocation of available funds.